JEFFREY H. WOOD
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

S. DEREK SHUGERT, OH Bar No. 84188
Trial Attorney
Natural Resources Section
Post Office Box 7611
Washington, D.C. 20044-7611
Phone: (202) 514-9269
Fax: (202) 305-0506
shawn.shugert@usdoj.gov

*Attorneys for Federal Defendants*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>USDA APHIS WILDLIFE SERVICES, *et al.*,<br><br>Federal Defendants. | **Case No. 3:17-cv-3564-WHA**<br><br>**STIPULATED SETTLEMENT AGREEMENT** |

WHEREAS, Plaintiffs Center for Biological Diversity, Western Watersheds Project, Animal Legal Defense Fund, Project Coyote/Earth Island Institute, Animal Welfare Institute, and Wildearth Guardians ("Plaintiffs"), brought claims pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-706, alleging violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4347, and its implementing regulations, 40 C.F.R. §§ 1500-1508, against the U.S. Department of Agriculture Animal and Plant Health Inspection Service-Wildlife Services ("APHIS-Wildlife Services") and William H. Clay in his official capacity as the Deputy Administrator of APHIS-Wildlife Services ("Federal Defendants");

WHEREAS, Plaintiffs' claims allege that APHIS-Wildlife Services is violating NEPA and the APA by failing or refusing to supplement its NEPA analysis regarding wildlife damage management activities in California's North District;

WHEREAS, Plaintiffs' position is that significant new circumstances and information have emerged since APHIS-Wildlife Services last prepared its 1994 Programmatic Environmental Impact Statement and its 1997 Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI");

WHEREAS, the Parties have engaged in good faith settlement negotiations in an effort to avoid the time and expense of further litigation;

WHEREAS, Plaintiffs and Federal Defendants believe therefore that it is in the interests of the Parties, and judicial economy to resolve the claims in this action without additional litigation;

NOW THEREFORE, it is stipulated and agreed to by Plaintiffs and Federal Defendants as follows:

1. <u>NEPA Review</u>.  APHIS-Wildlife Services entered into a Memorandum of Understanding ("MOU") with the California Department of Food and Agriculture ("CDFA") to collaborate on environmental analysis of wildlife management activities in California's North District. Nothing in this Agreement binds the State of California in any way.  It is only an agreement between Plaintiffs and Federal Defendants.

2. <u>APHIS-Wildlife Services commits to the following</u>:

a. By December 31, 2023, APHIS-Wildlife Services will issue a new Final Environmental Impact Statement ("FEIS") and Record of Decision ("ROD"). If either CDFA or APHIS-Wildlife Services terminates the MOU, APHIS-Wildlife Services agrees that it will unilaterally complete an FEIS and ROD. If APHIS-Wildlife Services anticipates that it will be unable to meet the 6 year deadline set out in this Paragraph, APHIS-Wildlife Services will confer with the Plaintiffs regarding the estimated time for completing the actions specified in this first sentence of this Paragraph and reserves the right to seek to modify the Agreement to extend time for completion of the actions specified in this first sentence of this Paragraph pursuant to Paragraph 7 below. Plaintiffs reserve the right to oppose any such extension.

b. Except activities for the protection of health and human safety,[1] activities targeting invasive species (including feral swine), and activities on behalf of threatened and endangered species, between the date that this Agreement is executed and the date that the ROD is signed, APHIS-Wildlife Services agrees to the following interim measures:

   i. APHIS-Wildlife Services agrees not to use EPA-labeled pesticides targeting mammalian species within the North District;

   ii. APHIS-Wildlife Services agrees to use only non-lead ammunition for all wildlife damage management activities conducted in the North District, except when dispatching animals for which carcasses will be retrieved from the environment, subject to a 60-day transition period from the date of execution of this Agreement;

   iii. APHIS-Wildlife Services agrees not to use body-gripping traps, glue traps, or spring-powered harpoon traps in Wilderness Areas and Wilderness Study

---

[1] APHIS-Wildlife Services agrees to provide Plaintiffs an annual report of the number and circumstances surrounding activities undertaken for health and human safety that implicate any of the interim measures identified in 2b.

3

       Areas in the North District;

    iv. APHIS-Wildlife Services agrees not to conduct aerial operations in Wilderness Areas and Wilderness Study Areas in the North District;

    v. APHIS-Wildlife Services agrees to abide by the recommended gray wolves mitigation measures provided in the April 15, 2014, concurrence letter by the U.S. Fish and Wildlife Service ("FWS").

3. <u>Definitions</u>.  The parties agree that the following terms used in this Settlement Agreement have the following definitions:

    a. The term "body-gripping trap" is defined as one that grips the mammal's body or body part, including, but not limited to, steel-jawed leghold traps, padded-jaw leghold traps, conibear traps, and snares.  Cage and box traps, nets, suitcase-type live beaver traps, and common rat and mouse traps shall not be considered body-gripping trap.

    b. The term "in areas occupied by gray wolves" as it appears in the April 15, 2014, concurrence letter from FWS is defined as, consistent with the consultation by FWS, areas where wolves are known to exist through reports and verification by the FWS and/or the California Department of Fish and Wildlife ("CDFW").

    c. The term "North District" is defined as areas within the boundaries of the following counties:  Butte, Del Norte, Glenn, Humboldt, Lassen, Mendocino, Modoc, Nevada, Plumas, Shasta, Sierra, Siskiyou, Sutter, Tehama, Trinity, and Yuba.

    d. The term "protection of health and human safety" is defined as activities, in response to a request by CDFW, to wildlife that demonstrate aggressive action that has resulted in physical contact with a human or exhibits an immediate threat to public health and safety, given the totality of the circumstances.  "Immediate threat" refers to wildlife that exhibits one or more aggressive behaviors directed toward a person that is not reasonably believed to be due to the presence of responders.  "Public safety" includes situations where a wildlife remains a threat despite efforts to allow or encourage it through active means to leave the area.

4

e.  The term "activities on behalf of threatened and endangered species" is defined as activities conducted at the direction of, and with the concurrence of, FWS or CDFW on behalf of federally or state listed threatened or endangered species.

4. <u>Attorneys' Fees and Costs</u>.  The Parties have agreed to settle any and all of Plaintiffs' claims for attorneys' fees, costs, and expenses associated with this litigation for a lump sum of $6,214.86. This Settlement Agreement represents the entirety of the undersigned Parties' commitments with regard to settlement of claims for attorneys' fees, costs, and expenses.

5. <u>Modification</u>.  This Agreement may be modified by written stipulation between the Parties. In the event that either party seeks to modify the terms of this Agreement, the party seeking the modification will confer at the earliest possible time with the other party.

6. <u>Subsequent NEPA Challenges</u>.  Nothing in this Settlement precludes any challenge by Plaintiffs to the validity or sufficiency of the NEPA analysis completed pursuant to paragraphs 2 and 3 above. Such challenges shall be made only upon (1) completion of the entire NEPA process following the issuance of APHIS-Wildlife Service's FEIS and ROD, and (2) Plaintiffs' exhaustion of any and all available administrative appeal opportunities. For any such challenge, judicial review will be conducted only to the extent allowed by, and pursuant to, the judicial review provisions of the APA.

7. <u>Dispute Resolution</u>.  In the event of a dispute among the Parties concerning the interpretation or implementation of any aspect of this Stipulation, the disputing Party shall provide the other Party with a written notice outlining the nature of the dispute and requesting informal negotiations.  The Parties shall meet and confer to attempt to resolve the dispute.  If the Parties cannot reach an agreed-upon resolution after 60 days following receipt of a written notice requesting informal negotiations or such longer time agreed to by the Parties, any Party may move the Court to resolve the dispute.  No motion or other proceeding seeking to enforce this Stipulation or for contempt of court shall be properly filed unless the Party seeking to enforce this Stipulation has followed the procedure set forth in this Paragraph, and the Party believes there has been noncompliance with an order of the Court.  In addition, this

Stipulation shall not, in the first instance, be enforceable through a proceeding for contempt of court.

8. Representative Authority.  The undersigned representatives of Plaintiffs and Federal Defendants certify that they are fully authorized by the party or parties whom they represent to enter into the terms and conditions of this Settlement Agreement and to legally bind those parties to it.

9. Compliance with Other Laws.  Nothing in this Settlement Agreement shall be interpreted as, or shall constitute, a commitment or requirement that Federal Defendants obligate or pay funds, or take any other actions in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable law.  Nothing in this Settlement Agreement shall be construed to deprive a federal official of authority to revise, amend, or promulgate regulations, or to amend or revise land and resource management plans.  Nothing in this Settlement Agreement is intended to, or shall be construed to, waive any obligation to exhaust administrative remedies; to constitute an independent waiver of the United States' sovereign immunity; to change the standard of judicial review of federal agency actions under the APA; or to otherwise extend or grant this Court jurisdiction to hear any matter, except as expressly provided in the Settlement Agreement.

10. Offsetting debts.  Under 31 U.S.C. §§ 3711, 3716; 26 U.S.C. § 6402(d); 31 C.F.R. §§ 285.5, 901.3; and other authorities, the United States will offset against the payment made pursuant to this stipulation Plaintiffs' delinquent debts to the United States, if any.  *See Astrue v. Ratliff*, 560 U.S. 586 (2010).

11. Mutual Drafting and Other Provisions.
    a. It is hereby expressly understood and agreed that this Settlement Agreement was jointly drafted by Plaintiffs and Federal Defendants.  Accordingly, the Parties hereby agree that any and all rules of construction, to the effect that ambiguity is construed against the drafting party, shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of the Settlement Agreement.

    b. This Settlement Agreement contains all of the agreements between Plaintiffs and Federal Defendants, and is intended to be and is the final and sole agreement between Plaintiffs and Federal Defendants concerning the complete and final resolution of Plaintiffs' claims. Plaintiffs and Federal Defendants agree that any other prior or contemporaneous representations or understandings not explicitly contained in this Settlement Agreement, whether written or oral, are of no further legal or equitable force or effect. Any subsequent modifications to this Settlement Agreement must be in writing, and must be signed and executed by Plaintiffs and Federal Defendants.

    c. This Settlement Agreement is the result of compromise and settlement, and does not constitute an admission, implied or otherwise, by Plaintiffs or Federal Defendants to any fact, claim, or defense on any issue in this litigation. This Settlement Agreement has no precedential value and shall not be used as evidence either by Federal Defendants or Plaintiffs in any other litigation except as necessary to enforce the terms of this Agreement.

12. <u>Force Majeure</u>. The Parties understand that notwithstanding their efforts to comply with the commitments contained herein, events beyond their control may prevent or delay such compliance. Such events may include natural disasters as well as unavoidable legal barriers or restraints, including those arising from actions of persons or entities that are not party to this Settlement Agreement.

13. <u>Dismissal</u>. Concurrently with this Settlement Agreement, the Parties shall file a stipulation of voluntary dismissal of this action. That stipulation will request that the Court retain jurisdiction to oversee compliance with the terms of this Stipulation and to resolve any disputes arising under this Stipulation and any motions to modify any of its terms. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

14. <u>Effective Date</u>. The terms of this Agreement shall become effective upon execution of this Settlement Agreement. The parties agree that this Settlement Agreement may be executed in one or more counterparts, each of which shall constitute an original, and all of which, taken

together, shall constitute the same instrument.  Facsimile or scanned signatures submitted by electronic mail shall have the same effect as an original signature in binding the parties.

Respectfully submitted,

DATED: October 30, 2017

JEFFREY H. WOOD
Acting Assistant Attorney General
United States Department of Justice
Environment & Natural Resources Division

By   /s/ S. Derek Shugert
S. DEREK SHUGERT
Trial Attorney
Natural Resources Section
Post Office Box 7611
Washington, D.C. 20044-7611
Tel:  (202) 514-9269
Fax:  (202) 305-0506
E-mail:  shawn.shugert@usdoj.gov

*Attorneys for Federal Defendants*

/s/ Collette L. Adkins
Collette L. Adkins (MN Bar No. 035059X)*
Center for Biological Diversity
P.O. Box 595
Circle Pines, MN 55014-0595
Phone: (651) 955-3821
cadkins@biologicaldiversity.org

Jennifer L. Loda (CA Bar No. 284889)
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612-1810
Phone: (510) 844-7136
Fax: (510) 844-7150
jloda@biologicaldiversity.org

*Attorneys for Plaintiffs*
*Admitted *pro hac vice*

**ATTESTATION OF COUNSEL**

I attest that I have secured the concurrence of the counsel whose signature appears above as to the form and contents of this document and his authorization to file this document on his behalf, as evidenced by the conformed signature appearing above.

DATED:  October 30, 2017                              */s/ S. Derek Shugert*
                                                                          S. DEREK SHUGERT

**CERTIFICATE OF SERVICE**

I, S. Derek Shugert, hereby certify that, on October 30, 2017, I caused the foregoing to be served upon counsel of record through the Court's electronic service. I declare under penalty of perjury that the foregoing is true and correct.

DATED:  October 30, 2017                        /s/ *S. Derek Shugert*
                                                S. Derek Shugert